I'm going to start with Mr. Verzog, and I'll give you all a chance to do a second. May it please the court, my name is Lawrence Verzog, and I represent Joseph Steele. Joseph Steele was denied effective assistance of counsel because his counsel failed to call a witness, Vanessa Martinez, the technician who tested his jacket for gunpowder residue and found no evidence that there was gunpowder residue. Why wasn't what counsel did strategic? He got to the jury a bit of a question about this without calling Martinez, whom we are told would have said the test wouldn't have shown this, that, and the other. Why wasn't what counsel did perhaps unwise but strategic? Well, I will tell you that in the record it strikes me that what counsel did was use the phrase that he knows from Strickland, that it's a strategy call, to make it seem like he did not engage in- Well, I'm not interested in whether counsel was a good guy or a bad guy or was trying to defend himself. I'm interested in whether a counsel in that situation might well make the judgment that this counsel made. Especially, this is also a case of possession, not necessarily of firing, so that the bringing in of that witness might- I don't think it was, Your Honor. He had made a pretrial motion seeking to put in documentary evidence of that act and was denied. And so the only actual evidence that he had left to put before the jury was Ms. Martinez's actual testimony. But if he did that, he opens up the door for the government to explain why there's no residue, because of the nature of the coat and the nature of the microscope that was used with regard to examining. Well, the government- I'm sorry, Judge. So doesn't he face the Hobbesian choice here of helping to eliminate a question in the jury's mind that perhaps he could- because the officer was going to say that the coat was sent for testing, right? Right. That was his testimony. Right. So wouldn't he have left it there and then said, geez, the government's got the burden of proof here? He tried to say that. They didn't produce any evidence of gunshot residue. The judge wouldn't let him do that, right? Right. Was that aired by the judge? We're not really- Which was firmed on appeal, but really, how does the judge- I mean, that strikes me as odd. I was a trial judge a long time ago, but I remember juries being regularly told, it's the government's burden. The government hasn't proved its case here. The government hasn't proved beyond a reasonable doubt. They sent something on to be tested. You haven't heard anything about tests. Except there's no evidence in the trial record that such a test exists. There was no- maybe the jury- The point that Judge Wesley is making seemed to me that counsel seemed to be making a strategic position to leave the burden of the government. Then the court may have made a mistake, and that was not traversed. That is not before us. But that now, he says, given what the court- you're saying- given what the court did, it would have been better to do it the other way. And that may be, but it was the court's mistake. It may have been a mistake, but the counsel was stuck with it. It wasn't- don't we have to- if we're thinking about- let's say that we look at this as a strategic choice, and it's hard not to at least ask that question since counsel himself said- Of course. I made a strategic choice, and here's the choice I made. Of course. Don't we then have to evaluate whether any reasonable lawyer could have made that choice? In other words, could you assume that you're going to be able to argue gunshot residue in closing when there's essentially been no testimony in the evidence that would open the door to talking about that? In other words, if we think that the district court got it right, and we got it right on appeal, and that that ruling was a very clear ruling, then even if it was a strategic choice, if it was an unreasonable strategic choice, isn't that a problem? Not for you. It's not- the law does not say that a mistake about strategic choices gets you out of the ineffective assistance situation. However, when you look at all the evidence, the trial counsel attempted, in his summation, to wiggle it in into the summation that, hey, there was no residue, but there was no evidence. What could he have said if he had called the expert? You don't believe the expert that there was no residue, but don't believe the expert's explanation as to why not there wasn't? Well- It seems to me he's left with less to say, credible to say to a jury, than what he was able to say by not putting it in. I don't- I can't- What would he have said, Mr. Gerson? What he would have said was- what he was actually left with the ability to say was, there's no evidence either way, and that was clear because the jury asked the question, was there any evidence of gunshot residue on the jacket? So it was clear the jury was- Then again, if the witness had come in and the witness said, here is why there was no gunpowder, because of a type of test we did, because of the kind of clothing he was wearing, because of this, wasn't he worse off than having this innuendo, which the court didn't let him push as much as he would have wanted, but this innuendo, which was there, sufficient so that the court asked, hey, how about this? Well- And then the jury asked. I think he was shut down on the innuendo, and I also haven't- I have tried cases with similar situations, and there's a way to argue, look, the scientist said there was no gunshot residue. She also said that sometimes there isn't, but you, the only evidence you have is that there wasn't any. There was no opportunity to say that to the jury based on the evidence adduced at trial. All he could do was sort of speculate that that was the case. Thank you. Thank you. Good morning, Your Honors, and may it please the court. Jalan Kamal on behalf of the United States. I also represented the United States at trial before the district court. Your Honors, trial counsel's performance was not deficient in any way, and since it was the last topic that Mr. Gertzog addressed, I'm going to start with the gunshot residue testing. And the fact is that I'm not sure I can say it any better than Judge Wesley just a moment ago. If trial counsel had called criminalist Martinez to testify, trial counsel would have basically evaporated any ability to make an argument or to raise reasonable doubt before the jury with respect to the gunshot residue testing. Should we make anything of the fact that trial counsel never called a single witness? No, Your Honor. And he did almost nothing? The short answer, Your Honor, is no. Under the Strickland standard, counsel's performance is not deficient simply because no witnesses are called. Defense counsel can perform perfectly competently simply by pointing to errors, omissions, or gaps in the government's case. It is the government that bears the burden at all times. Here, though, trial counsel's performance, we know that it was competent because trial counsel clearly tried a number of different ways not to step into the trap that Judge Wesley just addressed, right? He tried initially to try to have the conclusion of Ms. Martinez, which was the report itself, try to get that before the jury in pretrial motion practice. But because the report itself was the result of a faulty examination process, it was determined to be misleading and it was not qualified to be admitted under the hearsay exception without the accompanying testimony of the expert. That ruling was affirmed by this court on direct appeal. So the trial counsel first tried to make use of that gunshot residue conclusion without drawing the sword of Ms. Martinez's testimony. And then when that group was foreclosed, tried a different, equally canny route. Yes, sir? This notion that counsel was sort of building a trial strategy around trying to raise innuendo feels to me inconsistent with the record where counsel promised the jury in opening arguments that they were going to hear expert testimony about this, told the court he planned to call this witness who was sitting in the room ready to be called, and then apparently made sort of a spur-of-the-moment decision that I think I can argue the gunshot residue based on these little tidbits I've gotten. That's very different from sort of a well-laid strategy and wasn't reasonable having promised the jury. I mean, I think we have to take into account the opening argument, I would think. Is that even a reasonable strategy that gets you past the performance problem of the Strickland test? So two things on that point, Your Honor. The first one is the defense here, and it's natural given the posture of the case right now, but the defense strategy here did not rise and fall on the gunshot residue testing. If the court pays attention to the defense's opening, right, there were other arguments made based on other forensic tests that were made. For instance, equally if not more important for a defense attorney, and I'm wearing the defense attorney hat here for a moment, right, is to point to the DNA testing that was done on the firearm. Now, obviously the government called an expert witness, Ms. Ishii, to testify as to the where's and why's of how and when DNA persists and can be detected on a substance, but that for the defense was an equally sound strategy to pursue, Judge Robertson. And counsel did do that. I mean, it's not either or, right? The more things you can throw at the wall to stick some doubt there, the better. That's exactly right. And so defense, to the extent that we are characterizing defenses, the defense strategy as rising and falling on the gunshot residue test, I don't think that the record supports that. Here, the gunshot residue testing was yet another bit of evidence that the defense could try to use, but it came with serious downsides, and that, as we saw, was the fact that Ms. Martinez would have repudiated her own report if she had been called to testify. And that's why even if we set aside the performance prong of the Strickland test for a moment, which I do think here counsel's performance meets and exceeds, when evaluated in the context of all the other evidence in this case, there was really no prejudice to the defendant based on the fact that Ms. Martinez was not called to testify, to basically repudiate entirely her own conclusion in the report that she generated. Yeah, I witnessed it and wasn't able to identify him, right? He was not able to identify the defendant's face, Your Honor. You've never seen him before. He was a bystander. That's correct. So you have a number of shortcomings in your case on the government side. Well, respectfully, I wouldn't call them shortcomings. I would say there's- Why is it difficult? You have one year appeal. The conviction stands. The question is whether you had a good lawyer or not. You don't have to worry about that. But the question is, I mean, from the defendant's side, there wasn't facial identification. There was a chase, and there's no DNA on the gun. That's correct, Your Honor. And he didn't offer the glove, which actually, and he argued you should have, but I can't understand why he would want the glove in to explain why there's no DNA on the gun. He showed there was no DNA. So, I mean, so the question becomes whether this, quote, judgment call in a quote, somehow deviates from what the standard is with regard to professional performance. So I would respectfully submit that given the limitations of the gunshot residue testing, there was absolutely, there's no impact on the outcome here by the fact that it was omitted. And, in fact, if Ms. Martinez had been called to testify, I think the result would have been the exact same. To your point, Judge Wesley, about the government's case here, to be sure, the government didn't have a single piece of evidence that was completely overwhelming. But to the extent that there was really a star here that defeats any, that defeated any defense theory, it was really the fact that the entire transaction that night, and much of the recovery of the evidence, was all captured on surveillance video. Well, yeah, 9-1-1 call you surveillance video. They're on the scene quickly. He runs. There's two chasers, one in the car, one on foot. There's the gun being tossed, an object being tossed. They hear the clink. They capture him. They come back. They find the gun under the car. They find a shell casing at the scene where the firearm was allegedly discharged. That's exactly right, Your Honor. And most important here, and I'm not sure it really emerges from the briefs as clearly, but I do think it's particularly powerful, is that on the video footage, one can clearly see there's the discharge of a firearm, right, and one can clearly see from the reactions of the bystander that one of the gentlemen in that grouping has a firearm and is pointing it. When that photograph is enlarged, the color of the jacket can be seen, right? Mr. Steele's jacket can be seen on that video. And the ballistic testing here showed that a shell casing recovered on the corner where the shooting took place matched the gun that was recovered two and a half blocks away. So the foot pursuit here was long. It went south down McCombs Avenue, east all the way, a whole city block down 174th Street and up Grand Avenue. And the firearm, that's where the firearm was recovered, two and a half blocks away from the shell casing on the corner where the shooting occurred. But we have to, for that to be a super persuasive piece of evidence, we have to trust the testimony of the officer who says that I recovered this gun. I saw him toss it and I recovered it, right? You can think of all sorts of ways that you could have the gun that matches the shell casing but maybe not truthful testimony. I respectfully disagree there, Your Honor, because I think the inference here that the shell casing and the gun are so far apart, right? How does the gun get two and a half blocks away from the shell casing? In any event, it's up to the jury to decide whether they believe this officer. That's certainly the case, Your Honor. The jury had all of this evidence before it. And that's why in the face of the officer testimony, the 911 caller, the surveillance footage, the ballistic testing, yes, defense had some arguments it could have made, but the jury relied and convicted based on the totality of the evidence in front of it. And the inclusion of Ms. Martinez's testimony or additional evidence regarding the latex glove, respectfully, the government submits would not have altered the outcome here. Great. Thank you. I think the court has raised the issue that I wanted to raise with respect to the second prong of the ineffective assistance claim. There's one issue in this case. Who had the gun? There were three men. Any one of them could have had the gun. The fact that the gun was fired? Irrelevant. The fact that the shell was found some distance away from the gun? Irrelevant. The only eyewitness were the police officers. Irrelevant? How is it irrelevant? Because- The shells found adder about the scene of where the guns fired, right? Yes.  And the guns found two and a half blocks away. But there's no doubt- Excuse me, there's ballistics that say that they match. I understand. There's no doubt- The gun didn't walk there. There's no doubt that the gun was- How many people ran? All three. One. I believe all three ran. In any event, the point is we don't know how that shell got there. We don't know. There was one eyewitness- If you saw a gun fired and you found a shell casing in the area where the gun was fired, would there be a logical conclusion that that might be the shell from the gun that was fired? Sure. And the fact that the gun was fired is irrelevant. The only- Well, it's irrelevant in the sense that the charge is inferred as charging the firearm. It might be relevant in the sense that it is a piece of evidence that helps us tie defendant to the gun, right? The eyewitness saw a person in a burgundy jacket looking like they're holding the gun and then hears the firing. That suggests that at least there's not a mistake that that was in fact a gun and that the person in the burgundy jacket fired it. The discharge of the weapon is relevant in that sense, isn't it? Only if there's a question that there is a gun. There's no question that there is a gun. They found a gun. The question is who had the gun. Yes, but wasn't it this guy whom the policeman said, I believe he tossed that gun? It is. And isn't that, whether we like it or not, evidence on which the jury can convict? They can, if they credit the officer. First of all, the officer only said it was a metal object that went clunk. He didn't say it was a gun. And if the jury believes, obviously, that if Mr. Steele was the man who had the gun, then he's guilty. So, obviously, the jury could convict on this evidence. I think the question that I want to explore a little bit more is whether, for the purpose of the ineffective assistance claim, there's a reasonable probability that if counsel had pursued the evidence about the absence of the gunshot residue on the jacket, there's a reasonable probability that that would have changed the outcome. And so I guess my question for you is we have this eyewitness. We have the burgundy jacket. We're tying the holding of the gun to the person in the burgundy jacket. He's the only one there in a burgundy jacket. We have a surveillance video that corroborates that. We also have testimony from the officer who chased him, that he saw somebody toss a gun. Or toss an object. Toss an object, and a gun was found where that tossing happened, and the ballistics matched the shell casing at the site. Maybe you have doubts about the credibility of the officer. I get that. But given the video and given the burgundy jacket, where's the reasonable probability that if the jury had heard there was no gunshot residue on the jacket, but the probative value of that fact is quite limited by the fact that they didn't use the best technology, and you don't normally necessarily expect gunshot residue on the shooter unless there's singe, et cetera. And by the way, when you run, the gunshot residue can fall off. What added increment of doubt does that testimony need to be- I've been in situations, Your Honor, where you ask an agent, well, did you recover fingerprints? Knowing full well that the policy of the agency is not to fingerprint the gun for whatever reason. Or you ask, did you recover fingerprints? Knowing full well that the type of gun or the type of evidence is not really susceptible to appropriate fingerprinting for whatever reason. The government is certainly entitled to bring in evidence of that nature, that here fingerprinting isn't- But the jury believes in testing. And if they were able, the jury was clearly interested in whether there had been testing. Because in opening argument, counsel had suggested that there would be testimony on that. Right, and there wasn't. And the jury wanted to know if the jury didn't care, if testing wasn't an issue, the jury wouldn't have asked. So it's because he opened with it that made it ineffective when it didn't offer it? It certainly didn't help. It's not the only thing. But the fact that- So if a lawyer, during the course of a trial, makes a decision to then switch positions, they open themselves to ineffective assistance? Well, Judge, there are certainly many circumstances where, as a trial develops- Well, it certainly is possible if a lawyer changes her mind, his mind in the middle of the argument, to say, was that correct, what happened, what did it? But it can't be that a lawyer in the middle of the argument changing a position is going to be ineffective, because you want lawyers to be able to react to what's going on. Absolutely, absolutely. The changing of a strategy in the middle of a trial is not necessarily an effective assistance of counsel. But it has to make sense. But it's got to be a reasonable change of strategy. Exactly. And whether you opened with it might- And this was a three-day trial. This was a three-day trial. I could see in a month-long trial, oh, my goodness, some evidence has been introduced that makes my argument silly, or makes my argument less compelling. In a three-day trial where everybody knew all the evidence, and which is essentially a reasonable doubt trial, he shouldn't have opened on it, and he should, or having opened on it, he should have introduced. When Judge Wetzel says the problem is that he opened on it, that's not the only problem. The problem is that he didn't introduce it. Even if he hadn't opened on it, he should have introduced it, is our position. All right. Unless my colleagues have further questions? No. Thank you very much. Thank you, Your Honor. Appreciate both of your arguments.